**DAVIS & SHAW FURNITURE CO. et al. v UNDERWRITERS SALVAGE CO. OF NEW YORK et al.**

**Civ. A. No. 2741.**

United States District Court
D. Colorado.
April 25, 1951.

964

Denious & Denious, Denver, Colo., for the plaintiff.

Pershing, Bosworth, Dick & Dawson, by Winston S. Howard and Arthur K. Underwood, Jr., Denver, Colo., for the defendant Underwriters Salvage Co. of New York.

Wolvington & Wormwood, Denver, Colo., for the defendant Pinkerton National Detective Agency.

WALLACE, District Judge.

### Findings of Fact

#### I.

Plaintiffs are residents of Colorado. Defendant, Underwriters Salvage Company, is a resident of New York and defendant, Pinkerton National Detective, Inc., is a resident of Delaware. The matter in controversy exceeds $3,000, exclusive of interest and costs.

#### II.

This action is brought to recover damage to a warehouse located at 1545–1549 Thirteenth Street, Denver, Colorado. The premises are owned in fee by the Denver and Rio Grande Western Railroad Company. It leased the land to R. E. Pate in 1924 for one year with the right to continue occupation if both parties so desired. The lessor and lessee reserved the right to terminate the lease by giving thirty days' notice. The lease provided that all fixtures, structures and permanent improvements which might be erected by the lessee, attach to the land and become the property of the lessor; provided that the lessee had the right to remove such improvements, if rent was fully paid and other covenants kept, within thirty days after the termination of the lease. There is evidence, however, the warehouse was erected by R. E. Pate prior to 1924: the typed portion of the lease refers to a right of egress and ingress of his (lessee) ware-

house. The amount of rent paid by the lessee seems grossly inadequate if the four story warehouse was regarded as the property of the railroad. Therefore, for the purposes of this action the court concludes that Mrs. R. M. Pate, who is the successor in interest of R. E. Pate, was the owner of the warehouse on August 14, 1948, and Davis and Shaw Furniture Company had the leasehold interest of a tenant from month to month in the building on that date.

### III.

On August 3, 1948, the warehouse building and the merchandise stored therein were seriously damaged by fire. On the following day, August 4, 1948, representatives of fire insurance companies and representatives of defendant, Underwriters Salvage Company, hereinafter termed Salvage, held a conference with R. E. Pate, Jr., the president and general manager of Davis and Shaw. R. E. Pate, Jr., is the son of plaintiff, Mrs. R. M. Pate, and since 1935 has been her agent and has handled all her business matters, including the Davis and Shaw warehouse.

### IV.

At the conference of August 4, 1948, a contract was entered into between Salvage; Davis and Shaw Furniture Company; and the fire insurance companies. By the terms of the contract, Salvage agreed to dispose of the merchandise in the warehouse to the mutual advantage of all parties concerned and to divide the net proceeds among the insurance companies and Davis and Shaw, after deducting a commission.

### V.

Pursuant to this agreement, Salvage took possession and control over the goods in the warehouse and remained in possession until the outbreak of the second fire on August 14th. They made some repairs to the interior of the building to expedite the removal process and as a precautionary measure to insure the safety of persons removing the merchandise.

The contents of the building, in part, consisted of carpeting, padding, and similar material and after the fire of August 3rd, piles of this type goods remained smoldering, and created a fire hazard. In fact, from August 4th until August the 9th or 10th, the Fire Department was called back eight or nine times to extinguish fires that developed within the smoldering areas.

### VI.

During the conference between R. E. Pate, Jr. and Salvage, there was some discussion as to guards and the representative of Salvage stated they would furnish the guards. The evidence is not conclusive as to the nature of the agreement between the parties. Suffice to say, for a disposition of this case, two guards—later reduced to one—from the Pinkerton Agency were used in and around the building; and the guards did on various occasions report the outbreak of small fires to the Fire Department. The use of the guards was known to R. E. Pate, Jr.

### VII.

About 6 a.m. on August 14, 1948, fire broke out inside the warehouse. At least ten minutes before flames appeared, smoke could be seen inside the building and above the building in such quantities as to be readily apparent to a casual observer. A reasonably prudent observer could have discovered the danger of the outbreak of fire in time to notify the Fire Department so they would have been able to reach the warehouse in time to extinguish the fire before it was out of control.

### VIII.

The evidence does not disclose that the watchman or any other person in the employ or acting on behalf of defendants, or either of them, notified the Fire Department or turned in any alarm.

### IX.

At the time flames appeared, or shortly thereafter, a passing motorist stopped at the fire house and gave the alarm, and the Department arrived at the scene within two minutes thereafter. By the time the fire equipment arrived at the scene of the fire, the fire was completely out of control.

### X.

After the fire of August 3 and before the fire of August 14, 1948, the warehouse building was capable of being repaired and had a reasonable value of $50,000.

### XI.

The fire of August 14, 1948, damaged the building to the extent that it could not be economically restored and had no appreciable value. In addition the plaintiffs expended the reasonable sums of $1,562.25 for wrecking and demolishing the warehouse; $264.69 for rewiring the warehouse; and $110.10 for replacement of glass in the warehouse.

The plaintiffs, also, seek to recover $654.90 for temporary repairs; $680 for services of Davis & Shaw employees; $100 for furnishing material and brushes; and $1,750 for loss of sign location.

### XII.

Defendant, Salvage, alleged by cross complaint that Pinkerton Detective Agency contracted to guard the building; therefore Salvage had a right to recover against Pinkerton for any liability assessed against Salvage as a result of the damage to the warehouse. In the answer to the cross complaint, Pinkerton admitted contracting to guard the building but alleged the contract required them only to guard the premises to see that merchandise was not removed without authorization. Salvage did not attempt to prove the allegation of their cross complaint. The contract between Pinkerton and Salvage was not introduced so this court could see the nature and extent of Pinkerton's obligations. In fact, there was no attempt to show negligence of an employee of Pinkerton by Salvage and the evidence introduced at the trial is insufficient to predicate joint or several liability of Pinkerton.

### Conclusions of Law

### I.

The court has jurisdiction of the parties and subject matter of this action.

### II.

■ Defendant, Salvage, had the legal duty to take necessary and reasonable precaution to prevent the merchandise under their possession and control from causing harm to others. That duty did not arise, in the true sense of the word, by virtue of the contract with Davis and Shaw. No more so than any contract of sale creates a duty in the vendee to see that the property is not used in a negligent manner. Possession and control create the duty— not the means by which possession is attained.

■ Salvage owed a legal duty to plaintiffs in regard to the warehouse· by virtue of the foreseeability of harm that reasonably could be expected to result to the building if a fire was permitted to start in the merchandise. Counsel for Salvage contends the contract did not impose any legal obligation to turn in a fire alarm or in any manner protect the warehouse, itself. He cites for example the situation wherein "A" was hired to watch for the outbreak of fires in Buildings 1 and 3 but not Building 2, which lies between the other buildings. In this situation counsel states, and correctly so, "A" does not owe a legal duty to call the Fire Department if he sees Building 2 in flames. While humanitarians might deplore the cleavage between moral and legal duties, the law is clear that a man need not act as a good Samaritan. But that is not the instant case. In order to draw a proper analogy, the fact situation in the example should be as follows: Building 1 is a fire hazard. Building 2 is in close proximity thereto. A reasonably prudent man could foresee that a fire in Building 1 would spread and damage Building 2. "A" is placed in possession and control of Building 1; as a result, he owes a legal duty to the owner of Building 2, created by the foreseeability of harm, to prevent an outbreak of fire in Building 1.

### III.

■ As stated in the findings of fact, the defendant, Salvage, breached its legal

duty and as a direct and proximate result the plaintiffs have been damaged in the following sums and no other:

1. Damage to the warehouse $50,000.00
2. Wrecking and demolishing warehouse ............ 1,562.25
3. Rewiring warehouse ..... 264.69
4. Replacement of glass in warehouse ............ 110.10

IV.

 The evidence does not warrant a finding that the defendant, Pinkerton Detective Agency, is liable to plaintiffs or to the defendant, Salvage, on its cross complaint. There is insufficient evidence upon which to predicate a legal duty or a breach thereof.

V.

It is the judgment of the court the plaintiffs, R. M. Pate and Davis and Shaw Furniture Company, are entitled to the sum of $51,937.04 with costs of this action against the defendant, Underwriters Salvage Company of New York.